

2224 1st Avenue North
Birmingham, AL 35203

Phone: (205) 326-3336
(800) 241-9779
Fax:   (205) 326-3332

WWW.HGDLAWFIRM.COM

Taylor C. Bartlett, Attorney

May 10, 2024

**VIA ELECTRONIC FILING**
Hon. Georgette Castner
United States District Judge
United States District Court, District of New Jersey
Clarkson S. Fisher Fed. Bldg. & United States Courthouse
402 East State Street
Trenton, New Jersey 08608

      **Re:** *Mitchell v. Kenvue, Inc.*, No. 3:24-cv-4109-GC-JBD Plaintiffs' Response to Defendant's Pre-Motion Letter

Dear Judge Castner:

      I represent Ethel Mitchell and Annette Haggerty, the Plaintiffs in this case. I appreciate this opportunity to respond, pursuant to your Judicial Preferences, to the pre-motion letter filed in the case on May 3, 2024, by Defendant Kenvue, Inc. ("Kenvue"). I am joined in this by my co-counsel, W. Lewis Garrison, Jr., Christopher B. Hood, and Mark R. Ekonen of Heninger Garrison Davis, LLC (Birmingham, Alabama).

      **1. <u>Proper Defendant</u>.** Kenvue is a publicly traded company headquartered in New Jersey, created from the restructuring of Johnson & Johnson in 2023. It is "the world's largest pure-play consumer health company by revenue"[1] and owns the "iconic" and "beloved" brand Neutrogena®.[2] It owns Clean & Clear, another "iconic" brand."[3] Acne products sold under those two premium brands are addressed by the Complaint. Doc. 1, Complaint at ¶ 25 ("Defendant sells and distributes BPO Products under the brand names Clean & Clear and Neutrogena."). Kenvue owns marks for these acne products and reports earnings from the two premium brands under its own name, not the name of an affiliate or subsidiary. It is the proper defendant for those reasons, among others, and the allegations against it are to be taken as true at this pleading stage. *E.g., Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 177 (3d Cir. 2010).

      Whether Kenvue assigns tasks to other entities for development, regulation, testing, manufacture, marketing, storage, transportation, distribution, or sale of Neutrogena® and Clean &

---

[1] https://investors.kenvue.com/financial-news/news-details/2024/Kenvue-Reports-First-Quarter-2024-Results/default.aspx (accessed May 7, 2024).
[2] *Id.*; https://www.jnj.com/media-center/press-releases/johnson-johnson-announces-kenvue-as-the-name-for-planned-new-consumer-health-company (accessed May 7, 2024).

[3] https://www.kenvue.com/brands?gad_source=1&gclid=EAIaIQobChMI98ijsaeChgMVWE-5HAR0huQGOEAAYASAAEgLB2vD_BwE&gclsrc=aw.ds (accessed May 10, 2024).

Hon. Georgette Castner,
U.S. District Judge
5/10/24

Clear acne products is a question that may arise and, if so, should be answerable by Initial Disclosures or other early discovery. The Plaintiffs could name additional defendants with leave at that time, on that basis if warranted, if not earlier by amendment of right under Fed.R.Civ.P. 15(a)(1)(B).[4]

**2. Preemption.** The relief sought is not preempted. To the extent Kenvue and the acne products are subject to Section 379r of the federal Food, Drug, and Cosmetic Act ("FDCA"), the causes of action do not conflict with that regulation. The Plaintiffs seek to impose no requirement on Kenvue in conflict with FDA rules.

**3. Merits.** Kenvue criticizes the Valisure test results alleged by the Plaintiffs which informed the public of the benzene contamination of the acne products, but the challenge is very unpersuasive. It is contradicted by the record of other Neutrogena® skin products. As recently as 2021, a number of Neutrogena® aerosol sunscreens were found by Valisure to contain benzene, a finding investigated and *confirmed* by Kenvue's affiliate JJCI, leading to a voluntary recall of the products, in consultation with the FDA. *See IN RE: Johnson & Johnson Sunscreen Marketing, Sales Practices and Product Liability Litigation*, MDL 3015, No. 0:21-md-03015-AHS, Doc. 55 at 4-5 & n.2 (December 17, 2021).[5] The instant criticism is hollow, accordingly. Once before, the same lab found the same contaminant in a similar product, alerting the public to the danger. The finding was vindicated by the Kenvue affiliate. That is the record.

If the criticism of the lab is not entirely hollow, if in fact Kenvue possesses testing data to dispute Valisure in this case, the Plaintiffs expect Initial Disclosures to reveal that potential dispute. A merits question of material fact could be joined at the point if so. Unless and until that point is reached, the Plaintiffs' well-grounded allegations of benzene contamination are unchallenged.

The Plaintiffs plausibly claim relief under the laws of New Jersey, Maryland, and Texas, passing muster under Fed.R.Civ.P. 12(b)(6). To try to show the contrary, Kenvue states that "Plaintiffs cannot plead that [it] intentionally concealed benzene content." The Complaint contains allegations that Kenvue affirmatively misrepresented facts related to the benzene levels of the products and other facts from which scienter can be inferred. Circumstantial evidence is good proof of knowledge and intent. *See Allstate Ins. Co. v. Northfield Med. Ctr., P.C.*, 159 A.3d 412, 427 (N.J. 2017); *United States v. Philip Morris USA, Inc.*, 566 F.3d 1095, 1118 (D.C. Cir. 2009); *Spoljaric v. Percival Tours, Inc.*, 708 S.W.2d 432, 435 (Tex. 1986); *McClung-Logan Equip. Co. v. Thomas*, 172 A.2d 494, 500 (Md. 1961).

---

[4] Naming another defendant with which Kenvue contracts or arranges for any of the tasks identified above would not rule out its responsibility (read possible liability) for the task. Questions of fact of its responsibility could remain. For instance, advertising of the acne products by any entity could not occur without Kenvue control and involvement. It owns the product marks.

[5] The recall is public and subject to judicial notice.

Hon. Georgette Castner,
U.S. District Judge
5/10/24

      Kenvue maintains it had no duty to correct an affirmative misstatement. However, both Maryland and Texas impose a duty on a party to disclose information in those instances where the disclosure is necessary to correct a prior statement made by that party. *See*, *e.g.*, *Estate of White ex rel. White v. R.J. Reynolds Tobacco Co.*, 109 F. Supp. 2d 424, 431 (D. Md. 2000) (citations and quotations omitted) (Maryland law imposes a duty to speak "when one party makes a partial and fragmentary statement of fact"); *Hoffman v. AmericaHomeKey, Inc.*, 23 F. Supp. 3d 734, 745 (N.D. Tex. 2014) (noting that a duty to speak arises under Texas law "when one voluntarily discloses information, the whole truth must be disclosed; [] when one makes a representation, new information must be disclosed when that new information makes the earlier representation misleading or untrue; and [] when one makes a partial disclosure and conveys a false impression").

      Furthermore, for claims pursuant to New Jersey's consumer fraud act, "there are only three elements required for the prima facie proofs: 1) unlawful conduct by defendant; 2) an ascertainable loss by plaintiff; and 3) a causal relationship between the unlawful conduct and the ascertainable loss." *Bosland v. Warnock Dodge, Inc.*, 964 A.2d 741, 749 (N.J. 2009). Plaintiffs adequately plead those elements.

      The warranty claims are supported.  The Plaintiffs allege their reasonable reliance, for the warranty claims and for the fraud claims.  Doc. 1, Complaint at ¶¶ 65, 98, 115, 138. Kenvue dismisses the allegations as (mere) "general statements," but it is incorrect.  The statements are specific and substantive.  Its assertion that the Plaintiffs lack of privity likewise misfires. *See*, *e.g.*, *Alloway v. Gen. Marine Indus., L.P.*, 695 A.2d 264, 275 (N.J. 1997) (noting that for the purposes of express and implied warranties "the absence of privity no longer bars a buyer from reaching through the chain of distribution to the manufacturer").

      **4. Standing.** The harm the Plaintiffs allege, together with the relief they claim, satisfies the test for standing, because their allegations plausibly show that they suffered an injury in fact which is (1) fairly traceable to Kenvue's alleged conduct, and (2) likely to be redressed by a favorable judicial decision.  *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).  Injunctive relief can be supported because the Plaintiffs, in seeking the relief, are not confined by the proposition advanced by Kenvue, which is that "they cannot plead they would again purchase BPO Products they admit will contain benzene."

      The Plaintiffs are prepared to proceed with their Complaint for these given reasons.

      Respectfully submitted,

/s/ Taylor C. Bartlett
Taylor C. Bartlett, N.J. Bar No. 142752015
**HENINGER GARRISON DAVIS, LLC**
5 Penn Plaza, 23rd Floor
New York, NY 10001
Tel: (800) 241-9779
Fax: 205-380-8085
Email: taylor@hgdlawfirm.com