**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ETHEL MITCHELL *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>KENVUE, INC., and JOHNSON & JOHNSON CONSUMER INC.,<br><br>Defendants. | Civil Action No. 24-04109 (GC) (JBD)<br><br>**OPINION** |

**CASTNER, District Judge**

**THIS MATTER** comes before the Court upon Defendants Kenvue, Inc. and Johnson & Johnson Consumer Inc. (Johnson & Johnson)'s Motion to Dismiss (Motion) Plaintiffs' Amended Consolidated Class Action Complaint (ACC), (ECF No. 83), pursuant to Federal Rule of Civil Procedure (Rule) 12(b)(1) and 12(b)(6). (ECF No. 86.)[1] Plaintiffs opposed the Motion and Defendants replied. (ECF Nos. 88, 92.) Plaintiffs also filed three notices of supplemental authority, to which Defendants responded. (ECF Nos. 93, 94, 96, 98, 100, 101.) Defendants filed two notices of supplemental authority, and Plaintiffs filed a response. (ECF Nos. 95, 97, 99.) The Court has carefully reviewed the parties' submissions and decides the matter without oral argument pursuant to Rule 78(b) and Local Civil Rule 78.1(b). For the reasons set forth below, and other

[1] Plaintiffs are Alan Montenegro, Melissa Medina, Brenda Morgan, Cheryl Powers, Jenny Qu, Daniel Feldtkeller, Leslie LaMay, Kayleigh Schneider, Verunika Dujmovic, Abdallah Al-Qudsi, Marilyn Saavedra, Johne Conte, Starnella Harder, Alexandra Donato, Joseph Long, Noah Long, Robin Corey, Daniel Calzado, Ethel Mitchell, Annette Haggerty, Paulette Williams, Ashly Jones, and Basim Johnson. (ECF No. 83 ¶¶ 13-35.)

good cause shown, Defendants' Motion is **GRANTED**, and all counts are dismissed without prejudice.

## I. BACKGROUND[2]

The Court writes primarily for the benefit of the parties and assumes their familiarity with the underlying facts, which are set forth in greater detail in the Court's prior Opinion addressing Defendants' previous motion to dismiss. *Mitchell v. Kenvue, Inc.*, Civ. No. 24-4109, 2026 WL 509400 (D.N.J. Feb. 24, 2026). The Court outlines only the factual background necessary to resolve the instant Motion.

Defendant Johnson & Johnson, a citizen of Delaware with its principal place of business in New Jersey, sells benzoyl peroxide (BPO) acne treatment products under the brand names Clean & Clear and Neutrogena. (ECF No. 83 ¶¶ 1, 38.)[3] Defendant Kenvue, Inc. is a subsidiary of Johnson & Johnson and "shares responsibility for consumer health products including brands Clean and Clear and Neutrogena." (*Id.* ¶ 39.)[4] Plaintiffs reside in eleven states, and each Plaintiff purchased at least one of Defendants' BPO products. (*Id.* ¶¶ 1, 13-35.)[5]

---

2 On a motion to dismiss under Rule 12(b)(6), the Court must accept all facts as true, but courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation modified).

3 Page numbers for record cites (*i.e.*, "ECF Nos.") refer to the page numbers stamped by the Court's e-filing system and not the internal pagination of the parties.

4 Defendants again contend Kenvue, Inc. should be dismissed from this action because "Plaintiffs' allegations lump[] [Defendants together] and misrepresent[] [Kenvue, Inc.'s] relationship with Johnson & Johnson, a company with which Defendants have no current affiliation." (ECF No. 86-1 at 15 n.2). The Court will not dismiss Kenvue, Inc. for these reasons at this early stage. *See McMahon v. Volkswagen Aktiengesellschaft*, Civ. No. 22-1537, 2023 WL 4045156, at *10 (D.N.J. June 16, 2023).

5 Plaintiffs reside in California, Connecticut, Illinois, Maryland, Missouri, Nevada, New York, Ohio, Pennsylvania, Texas, and Washington. (ECF No. 80 ¶¶ 13-35.) The BPO products purchased by Plaintiffs include Clean & Clear Continuous Control Acne Cleanser; Clean & Clear Persa-Gel® 10; Clean & Clear Continuous Control Benzoyl Peroxide Acne Face Wash;

The premise of this action involves Defendants' alleged manufacture, production, and sale of BPO products containing dangerous levels of benzene, a well-known human carcinogen.[6] (*Id.* ¶¶ 3, 7-8.) Plaintiffs allege that the BPO products contain benzene because BPO naturally degrades into the carcinogen "under normal consumer use, handling, and storage conditions." (*Id.* ¶¶ 2, 7.) Plaintiffs allege that, due to the BPO products' benzene content—which Plaintiffs claim exceeds limits set by the United States Food and Drug Administration (FDA) (*Id.* ¶ 64, 132, 134)—the products are "adulterated, misbranded and illegal" to sell under various state laws. (*Id.* ¶ 11.) Plaintiffs further allege that the products' benzene contamination renders them "worthless," and they allege that they would not have purchased these products, or would have paid less for them, had they known the products contain and/or degrade to form benzene. (*Id.* ¶ 11, 13-35.)

The health hazards of benzene are well-established, (*Id.* ¶¶ 53-63), and over the past three years, the FDA has announced recalls of various drug and cosmetic products identified as containing "low" or "trace levels" of benzene. (*Id.* ¶ 77.)

Studies dating back to as early as 1936 have found that BPO degrades into benzene when exposed to heat over time. (*Id.* ¶¶ 96-97.) In 2024, studies connected this finding to BPO acne products in particular, (*Id.* ¶ 102), and on March 5, 2024, Valisure LLC[7] submitted a Citizen Petition to the FDA requesting a suspension of sales and recall of BPO acne products from the U.S. market based on its findings that numerous BPO acne products contained elevated levels of

---

Neutrogena Rapid Clear Stubborn Acne Spot Gel; Neutrogena Stubborn Acne AM Treatment; Neutrogena Stubborn Marks PM Treatment; Neutrogena On-the-Spot Acne Treatment; and Neutrogena Clear Pore Cleanser/Mask. (*Id.* ¶¶ 13-35.)

[6] The Court has subject matter jurisdiction under 28 U.S.C. § 1332(d)(2).

[7] Valisure is a company that operates an "analytical laboratory" and is registered with the Drug Enforcement Administration. (*Id.* ¶ 82.) They are not a party to this case.

benzene. (*Id.* ¶ 81-95.) The FDA has issued warnings to the manufacturers of drugs containing BPO. (*Id.* ¶ 107.)

The Federal Food, Drug, and Cosmetic Act (FDCA), 21 U.S.C. § 301, *et seq.*, and its implementing regulations, 21 C.F.R. § 1, *et seq.*, set forth the requirements for the branding and selling of over-the-counter (OTC) drugs. *Crozier v. Johnson & Johnson Consumer Cos., Inc.*, 901 F. Supp. 2d 494, 503 (D.N.J. 2012). The FDCA provides no private right of action and Plaintiffs bring claims under state law only. *See In re Orthopedic Bone Screw Prods. Liab. Litig.*, 193 F.3d 781, 788 (3d Cir. 1999) (citation omitted); (ECF No. 83. ¶¶ 192-299.) However, Plaintiffs rely on the FDCA and its associated regulations as part of their theory for why they are entitled to relief under their state law claims. Specifically, Plaintiffs allege that Defendants sold products that were "adulterated" and "misbranded" under the FDCA. *See* 21 U.S.C. §§ 351, 352. (*See* ECF No. 83 ¶¶ 123, 130, 132.) Plaintiffs allege that the products were "adulterated" based on three theories: (1) benzene constitutes a decomposed or filthy substance in the BPO products pursuant to 21 U.S.C. § 351(a)(1); (2) the products were not manufactured in accordance with current good manufacturing practices (cGMPs), 21 CFR § 210, *et seq.*, which are the minimum requirements for the "manufacture, processing, packaging, or holding of a drug"; and (3) the products exceeded the "2 ppm limit" for benzene in Chapter 467 of the United States Pharmacopeia. (*Id.* ¶¶ 132-159.) Plaintiffs allege that Defendants' products were misbranded under 21 U.S.C. § 352 because the products' "labeling is false, misleading, and incomplete" by failing to "disclose the presence of benzene or the risk of benzene formation." (*Id.* ¶ 160.)

The state law causes of action that Plaintiffs allege in the AAC are the same as in their original consolidated complaint. (*See* ECF No. 59.) Plaintiffs bring claims for violations of the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.* (Count I) and the

California Consumers Legal Remedies Act, Cal. Bus. & Prof. Code § 1750, *et seq.* (Count II); false advertising in violation of California and New York statutory law (Count III)[8]; deceptive trade practices under various state statutes (Count IV)[9]; breach of the implied warranty of merchantability (Count V); negligent misrepresentation or omission (Count VI); unjust enrichment (Count VII); and breach of express warranty (Count VIII). Plaintiffs seek injunctive, declaratory, and monetary relief. (*Id.* at 138-139.)

Previously, Defendants sought to dismiss Plaintiff's complaint pursuant to Rules 12(b)(1) and 12(b)(6). (ECF No. 60.) The Court held that Plaintiffs had standing to pursue their claims for monetary damages and restitution but not for injunctive or declaratory relief, and that Plaintiffs ultimately failed to state a claim under Rules 8 and 9. *Mitchell*, 2026 WL 509400, at *7, *10. The Court permitted Plaintiffs to file the ACC in accordance with Local Rule 15.1, (ECF No. 79), which Plaintiffs filed on March 26, 2026, (ECF No. 83).[10] On April 27, 2026, Defendants filed

---

[8] Plaintiffs cite the California False Advertising Law, Cal. Bus. & Prof. Code § 17500, *et seq.*, and the New York General Business Law, N.Y. Gen. Bus. Law § 350, *et seq.* (ECF No. 83 ¶¶ 227-228.)

[9] Plaintiffs cite the California Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*; the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, *et seq.*; the Maryland Unfair or Deceptive Trade Practices Act, Md. Code Com. Law § 13-301, *et seq.*; the Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407, et seq.; the Nevada Deceptive Trade Practice Act, Nev. Rev. Stat. § 598.0903, *et seq.*; the New York General Business Law, N.Y. Gen. Bus. Law § 349; the Ohio Consumer Sales Practices Act, Ohio Rev. Code § 1345.01, *et seq.*; the Ohio Deceptive Trade Practices Act, Ohio Rev. Code §4165, *et seq.*; the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-1, *et seq.*; the Texas Unfair Trade Practices and Consumer Protection Law, Tex. Bus. & Com. Code § 17.41, *et seq.*; and the Washington Consumer Protection Act, Wash. Rev. Code § 19.86.010, *et seq.* (ECF No. 83 ¶¶ 238-247.)

[10] Plaintiffs originally filed the AAC at ECF No. 80 on March 26, 2026, but on the Court's direction, (ECF No. 82), re-filed the AAC with the attachment required by Local Civil Rule 15.1(a)(2) at ECF No. 83. As such, the Court considers ECF No. 83 the operative AAC.

the instant Motion to Dismiss, which seeks to dismiss the ACC pursuant to Rules 12(b)(1) and 12(b)(6). (ECF Nos. 86, 86-1 at 35.)

## II. LEGAL STANDARD

### A. Rule 12(b)(1)

Rule 12(b)(1) permits a defendant to move at any time to dismiss the complaint for lack of subject-matter jurisdiction on either facial or factual grounds. *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000).

A facial challenge asserts that "the complaint, on its face, does not allege sufficient grounds to establish subject matter jurisdiction." *Iwanowa v. Ford Motor Co.*, 67 F. Supp. 2d 424, 438 (D.N.J. 1999). In analyzing a facial challenge, a court "must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." *Gould Elecs. Inc.*, 220 F.3d at 176. "A court considering a facial challenge construes the allegations in the complaint as true and determines whether subject matter jurisdiction exists." *Arosa Solar Energy Sys., Inc. v. Recom Solar*, LLC, Civ. No. 18-1340, 2021 WL 1196405, at *2 (D.N.J. Mar. 30, 2021).

A factual challenge, on the other hand, "attacks allegations underlying the assertion of jurisdiction in the complaint, and it allows the defendant to present competing facts." *Hartig Drug Co. Inc. v. Senju Pharm. Co.*, 836 F.3d 261, 268 (3d Cir. 2016). The "trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case" and "the plaintiff will have the burden of proof that jurisdiction does in fact exist." *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 n.3 (3d Cir. 2006) (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). "Therefore, a 12(b)(1) factual challenge strips the plaintiff of the protections and factual deference provided under 12(b)(6) review." *Hartig Drug Co.*, 836 F.3d at 268. Regardless of the type of challenge, the plaintiff bears the "burden of proving that the court

has subject matter jurisdiction." *Cottrell v. Heritages Dairy Stores, Inc.*, Civ. No. 09-1743, 2010 WL 3908567, at *2 (D.N.J. Sep. 30, 2010) (citing *Mortensen*, 549 F.2d at 891).

"A motion to dismiss for want of standing is . . . properly brought pursuant to Rule 12(b)(1), because standing is a jurisdictional matter." *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007). "In evaluating whether a complaint adequately pleads the elements of standing," under a facial challenge to standing, "courts apply the standard of reviewing a complaint pursuant to a Rule 12(b)(6) motion to dismiss for failure to state a claim: 'Court[s] must accept as true all material allegations set forth in the complaint, and must construe those facts in favor of the nonmoving party.'" *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012) (alteration in original).

**B. Rule 12(b)(6)**

On a motion to dismiss for failure to state a claim upon which relief can be granted, courts "accept the factual allegations in the complaint as true, draw all reasonable inferences in favor of the plaintiff, and assess whether the complaint and the exhibits attached to it 'contain enough facts to state a claim to relief that is plausible on its face.'" *Wilson v. USI Ins. Serv. LLC*, 57 F.4th 131, 140 (3d Cir. 2023) (quoting *Watters v. Bd. of Sch. Dirs. of Scranton*, 975 F.3d 406, 412 (3d Cir. 2020)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Clark v. Coupe*, 55 F.4th 167, 178 (3d Cir. 2022) (quoting *Mammana v. Fed. Bureau of Prisons*, 934 F.3d 368, 372 (3d Cir. 2019)). When assessing the factual allegations in a complaint, courts "disregard legal conclusions and recitals of the elements of a cause of action that are supported only by mere conclusory statements." *Wilson*, 57 F.4th at 140 (citing *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 904 (3d Cir. 2021)). The defendant bringing a Rule 12(b)(6) motion bears the burden of "showing that a complaint fails to state a claim." *In re Plavix Mktg., Sales Pracs. &*

*Prod. Liab. Litig. (No. II)*, 974 F.3d 228, 231 (3d Cir. 2020) (citing *Davis v. Wells Fargo*, 824 F.3d 333, 349 (3d Cir. 2016)).

In deciding a Rule 12(b)(6) motion, the court can only consider "the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). A court may also consider any document "integral to or explicitly relied upon in the complaint" when ruling on a motion to dismiss. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

When claims sound in fraud, plaintiffs "must satisfy the heightened pleading standards of Federal Rule of Civil Procedure 9(b)." *Burns v. Stratos*, No. 22-1319, 2023 WL 4014474, at *2 n.3 (3d Cir. June 15, 2023) (citing *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007)); *see also* Fed. R. Civ. P. 9(b) ("In alleging fraud . . . , a party must state with particularity the circumstances constituting fraud[.]"); *Foglia v. Renal Ventures Mgmt., LLC*, 754 F.3d 153, 155-58 (3d Cir. 2014). This ordinarily requires a plaintiff who alleges fraud to "support its allegations 'with all of the essential factual background that would accompany the first paragraph of any newspaper story—that is, the who, what, when, where and how of the events at issue.'" *United States ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC*, 812 F.3d 294, 307 (3d Cir. 2016) (quoting *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 217 (3d Cir. 2002)); *accord Frederico*, 507 F.3d at 200 ("To satisfy this standard, the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation.").

## III. DISCUSSION

### A. Standing

Defendants again argue that Plaintiffs lack standing to seek injunctive or declaratory relief because they have not plausibly alleged a future injury, as Plaintiffs have no intention of purchasing Defendants' BPO acne medications in the future. (ECF No. 86-1 at 44.) In Plaintiffs' Opposition, they withdraw their request for injunctive relief. (ECF No. 88 at 10 n.1.) Therefore, the Court need not address Plaintiffs' standing to seek injunctive relief.[11] As the Court has previously held, and as Defendants do not presently contest, Plaintiffs have standing to seek monetary damages and restitution. *See Mitchell*, 2026 WL 509400, at *7.

---

[11] In the ACC, Plaintiffs seek declaratory relief as well. (ECF No. 83 at 108, 138.) But, as with Plaintiffs' prior complaint, the only references to declaratory relief in the AAC are "made in connection with [Plaintiffs'] request for injunctive relief." *Johnson & Johnson*, 903 F.3d at 292. n.19. Indeed, the full prayer for relief with respect to declaratory relief states: "An order awarding declaratory relief, and any further retrospective or prospective injunctive relief permitted by law or equity including enjoining Defendants from continuing the unlawful practices alleged herein, and injunctive relief to remedy Defendants' past conduct." (ECF No. 83 ¶ 299.) Plaintiffs here would not have standing for injunctive relief. To satisfy Article III standing for injunctive relief, plaintiffs must "establish that [they are] likely to suffer future injury from [Defendants'] conduct." *In re Johnson & Johnson, Talcum Powder Prod. Mktg., Sales Pracs. & Liab. Litig.*, 903 F.3d 278, 292 (3d Cir. 2018) (citation modified). As the Court concluded in its prior Opinion, Plaintiffs are not currently using and have no intention of purchasing Defendants' BPO products in the future. *Mitchell*, 2026 WL 509400, at *10. (*See* ECF No. 83 ¶¶ 13-35 (stating that each Plaintiff "would not have purchased, or would have paid less for, Defendants' BPO Products had Defendants warned about the presence of benzene or that the BPO Products could degrade into benzene . . . ").) Because Plaintiffs would lack standing for injunctive relief, the Court concludes they also lack standing to pursue declaratory relief. *See Mitchell*, 2026 WL 509400, at *10 n.14; *see also Johnson & Johnson*, 903 F.3d at 292. n.19 ("Because [the plaintiff's] references to 'declaratory' relief appear to be a mere rehashing of her requests for injunctive relief . . . we need not repeat our standing analyses . . . ."); *see also In Re Target Corp. BPO Sales & Mktg. Litig.*, Civ. No. 24-1323, 2026 WL 145824, at *6 (D. Minn. Jan. 20, 2026) (finding the plaintiffs lacked standing to pursue injunctive and declaratory relief).

**B. Preemption and Failure to State a Claim**

As was raised in the prior motion, the parties again dispute whether Plaintiffs' state law statutory and common law claims are preempted by the FDCA and associated regulations. As the Court held in its prior Opinion, while the Court finds that not all of Plaintiffs' claims are preempted, Plaintiffs have nonetheless failed to allege with specificity the parallelism of their state law claims. *Mitchell*, 2026 WL 509400, at *10, *14, *15.

The Supremacy Clause of the United States Constitution, U.S. Const. art. VI, cl. 2, displaces state law that "interferes with or is contrary to federal law." *Pennsylvania v. Navient Corp.*, 967 F.3d 273, 287 (3d Cir. 2020) (quoting *Free v. Bland*, 369 U.S. 663, 666 (1962)). There are three ways that "[f]ederal law can preempt state law . . . : (1) express preemption; (2) field preemption; or (3) conflict preemption." *Klotz v. Celentano Stadtmauer & Walentowicz LLP*, 991 F.3d 458, 463 (3d Cir. 2021) (citing *Farina v. Nokia Inc.*, 625 F.3d 97, 115 (3d Cir. 2010)). These categories "'are not rigidly distinct' . . . [a]nd at least one feature unites them: Invoking some brooding federal interest or appealing to a judicial policy preference should never be enough to win preemption of a state law; a litigant must point specifically to 'a constitutional text or a federal statute' that does the displacing or conflicts with state law." *Virginia Uranium, Inc. v. Warren*, 587 U.S. 761, 767 (2019) (first quoting *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372 n.6 (2000); and then quoting *Puerto Rico Dep't of Consumer Affs. v. Isla Petroleum Corp.*, 485 U.S. 495, 503 (1988)).

When federal preemption is invoked, the "inquiry is guided by two principles." *Navient Corp.*, 967 F.3d at 288 (citing *Farina*, 625 F.3d at 115). The first is that "the intent of Congress is the 'ultimate touchstone' of preemption analysis," *id.* (quoting *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996), and courts "look to the language, structure, and purpose of the relevant statutory and regulatory scheme" to discern that intent. *Shuker v. Smith & Nephew, PLC*, 885 F.3d 760, 771

(3d Cir. 2018) (quoting *Sikkelee v. Precision Airmotive Corp.*, 822 F.3d 680, 687 (3d Cir. 2016)). The second principle is "the basic assumption that Congress did not intend to displace state law," *Navient Corp.*, 967 F.3d at 288 (quoting *Farina*, 625 F.3d at 116), unless a federal statute contains an express preemption clause or when a case arises in an area that has historically been heavily regulated by the federal government, in which case, courts look to the statute's plain wording to discern Congress's preemptive intent, *Puerto Rico v. Franklin Cal. Tax-Free Tr.*, 579 U.S. 115, 125 (2016) (quoting *Chamber of Com. of U.S. v. Whiting*, 563 U.S. 582, 594 (2011)). "Preemption is an affirmative defense and therefore, dismissal under Rule 12(b)(6) is only justified when [a] defendant can show that preemption is 'manifest in the complaint itself.'" *Doe-1 v. LexisNexis Risk Sols., Inc.*, Civ. No. 24-4566, 2025 WL 306592, at *6 (D.N.J. Jan. 27, 2025) (quoting *Lupian v. Joseph Cory Holdings LLC*, 905 F.3d 127, 130-31 (3d Cir. 2018)).

The FDCA contains a broad express preemption provision which provides that no state "may establish or continue in effect any requirement—(1) that relates to the regulation of a [nonprescription drug]; and (2) that is different from or in addition to, or that is otherwise not identical with, a requirement under" the FDCA. 21 U.S.C. § 379r(a). "Congress has therefore mandated that states may not create requirements different from the FDCA's requirements." *Crozier v. Johnson & Johnson Consumer Cos., Inc.*, 901 F. Supp. 2d 494, 503 (D.N.J. 2012); *see, e.g.*, *Carter v. Novartis Consumer Health, Inc.*, 582 F. Supp. 2d 1271, 1282 (C.D. Cal. 2008) ("[V]irtually any state requirement that relates to the regulation of nonprescription drugs can be preempted, regardless of the common law [or state legislative or regulatory] theory under which it is brought." (citing *Riegel v. Medtronic, Inc.*, 552 U.S. 312, 324-25 (2008)); *Navarro v. Walmart, Inc. (Walmart I)*, Civ. No. 24-00288, 2025 WL 3563471, at *12 (E.D. Cal. Dec. 12, 2025), *report and recommendation adopted*, 2026 WL 266374 (E.D. Cal. Feb. 2, 2026).

But the FDCA "does not preempt claims under state law that impose identical or 'parallel' requirements to FDA regulations, such as where a plaintiff sues over a defendant's violation of the FDCA." *Eisman v. Johnson & Johnson Consumer, Inc.*, Civ. No. 24-01982, 2025 WL 241024, at *3 (C.D. Cal. Jan. 17, 2025) (citations omitted); *Riegel*, 552 U.S. at 330 (holding that an FDCA provision "does not prevent a State from providing a damages remedy for claims premised on a violation of FDA regulations; the state duties in such a case 'parallel,' rather than add to, federal requirements"); *Bates v. Dow Agrosciences LLC*, 544 U.S. 431, 447, 454 (2005) (holding that [t]o be parallel to federal law, a state-law claim need only be "equivalent to, and fully consistent with," federal law, but it need "not be phrased in the identical language as its corresponding [federal] requirement" (emphasis removed)). Accordingly, to survive a motion to dismiss, Plaintiffs must bring state causes of action that impose parallel requirements to those imposed by the FDCA and must plausibly allege Defendants violated those requirements.

In support of Plaintiffs' adulteration theory, Plaintiffs allege that state laws impose the same purity and manufacturing standards as federal law, and Defendants' products are adulterated and fail to meet those standards. (ECF No. 83 ¶ 172.) Plaintiffs contend that selling adulterated products also violates state deceptive trade practices statutes, among other state statutes and common law. (*Id.* ¶ 192-299.) As to their misbranding theory, Plaintiffs argue in their Opposition—but do not assert in the AAC—that the same facts causing this misbranding under the FDCA support their state-law causes of action for unfair competition, false advertising, deceptive trade practices, negligent omission and misrepresentation, and breach of express warranty. (ECF No. 88 at 21.) The Court will address both of Plaintiff's theories of liability in turn and evaluate whether Plaintiffs have corrected the deficiencies identified in the Court's prior opinion. *See Mitchell*, 2026 WL 509400, at *12-17.

### 1. *Mislabeling and Misbranding*

In the ACC, Plaintiffs allege that the BPO products contain elevated and dangerous levels of benzene, rendering the products "misbranded" and thus "illegally sold under parallel state and federal law." (ECF No. 83 ¶¶ 12, 14.) In the Court's prior Opinion, following the approach in *In re Target Corp. BPO Sales & Mktg. Litig.*, 2026 WL 145824, at *10, the Court held that Plaintiffs' misbranding theory was not preempted to the extent that Plaintiffs alleged their claims were cognizable under parallel state law. *Mitchell*, 2026 WL 509400, at *13. Plaintiffs ask the Court to retain that holding. (ECF No. 88 at 31-32.) In contrast, Defendants argue that Plaintiffs' claims are expressly preempted. (ECF No. 86-1 at 36.) They contend that their BPO products comply with the Acne Monograph and that thus, pursuant to 21 C.F.R. § 330.1, the products are "safe and effective" without any benzene warning. (*Id.* at 37.) Defendants contend that because "the use of BPO and resulting benzene" are "generally recognized as safe and effective," it is not plausible that federal law would deem their BPO products misbranded. (*Id.* at 41.)

Defendants' argument—that the existence of the Monograph means Plaintiffs' misbranding theory is preempted—tracks the approach in *Howard v. Alchemee, LLC*, Civ. No. 24-01834, 2024 WL 4272931, at *8 (C.D. Cal. Sep. 19, 2024).[12] The Court rejected the *Howard* approach in its prior Opinion, *Mitchell*, 2026 WL 509400, at *13, and continues to find the analysis in *Target Corporation* more persuasive for the reasons previously stated. *See Mitchell*, 2026 WL 509400,

---

[12] *In re L'Oreal USA Benzoyl Peroxide Prods. Litig.*, which Defendants cite in one of their notices of supplemental authority (ECF No. 99 at 2), also follows the approach in *Howard*. Civ. No. 24-2735, 2026 WL 2719653, at *7 (S.D.N.Y. Sept. 15, 2026). *L'Oreal* is not binding on this Court, and the Court finds that it does not provide a basis to depart from the instant findings. *See Threadgill v. Armstrong World Indus., Inc.*, 928 F.2d 1366, 1371 (3d Cir.1991) ("The doctrine of *stare decisis* does not compel one district court judge to follow the decision of another.")

at *13 (citing *In re Target Corp. BPO Sales & Marketing Litig.*, 2026 WL 145824, at *5). Therefore, the Court again holds that Plaintiff's claim—that Defendants were required to disclose benzene's presence even if the Acne Monograph contained no such requirement—is not preempted by the FDCA. *See also Navarro v. Walmart, Inc.* (*Walmart 2*), Civ. No. 24-288, 2026 WL 2355980, at *11 (E.D. Cal. Aug. 13, 2026), *report and recommendation adopted*, 2026 WL 2905768 (E.D. Cal. Sep. 28, 2026) (holding that "it does not appear that a misbranding theory, based on Chapter V of the FDCA, is expressly preempted by the Acne Monograph"); *Navarro v. Walgreens Boots All., Inc.* (*Walgreens*), Civ. No. 24-00290, 2026 WL 2355975, at *9-10 (E.D. Cal. Aug. 13, 2026), *report and recommendation adopted*, 2026 WL 2924631 (E.D. Cal. Sep. 29, 2026) (same); *Bodunde v. Walgreens Boots All., Inc.*, Civ. No. 24-00985, 2026 WL 2363529, at *12, *15 (E.D. Cal. Aug. 13, 2026) ("[T]he Court is persuaded that although the Acne Monograph contains certain requirements, Walgreens' BPO Products are also subject to Chapter V of the FDCA, which covers general labeling requirements. . . . Plaintiffs' misbranding claims, under the circumstances, are not categorically preempted."); *Rutledge v. Walgreen Co.*, 182 F.4th 168, 180 (2d Cir. 2026) (holding that in the context of a monograph for acetaminophen, "[t]he monograph does not . . . expressly prohibit additional warnings not specified therein").

Although Defendants' preemption arguments about the Acne Monograph fail, Plaintiffs must still allege that their claims are cognizable under parallel state law in order to properly "state a 'parallel' claim." *See Conley v. St. Jude Med., LLC*, 482 F. Supp. 3d 268, 275 (M.D. Pa. 2020) ("In order to adequately allege a 'parallel' claim that would escape preemption, a plaintiff must generally allege 'specific violations of federal law that establish a parallel state duty' [but] '[g]eneralized common law theories of liability' do not suffice to meet this standard." (citations omitted); *see also Millman v. Medtronic*, Civ. No. 14-1465, 2015 WL 778779, at *4 n.2 (D.N.J.

Feb. 24, 2015) ("To state a 'parallel' claim, a plaintiff must allege (1) the violation of a specific federal requirement. . . ; (2) the violation of an identical state-law duty; and (3) that the predicate federal violation caused his or her injuries."); *Walmart 1*, 2025 WL 3563471, at *18 (noting that plaintiffs must plead the "parallelism of each state law asserted" with "specificity"); *see also Bodunde v. Walgreens Boots All., Inc.*, 2026 WL 2363529, at *13 (agreeing with the Court's prior opinion that, although the misbranding theory is not preempted, "[p]laintiffs must still allege that their claims are cognizable under parallel state law").

Plaintiffs argue that the ACC establishes parallel liability for misbranding because their state-law claims "target the same allegedly misleading labeling and omissions" prohibited by federal law. (ECF No. 88 at 30-31.) Specifically, Plaintiffs point to their allegation that the BPO products are misbranded under 21 U.S.C. § 352 because "Defendants failed to disclose that their BPO products decompose into benzene." (*Id.* at 30.) Plaintiffs submit, "That same omission forms the basis of Plaintiffs' parallel state-law claims for unfair competition, false advertising, deceptive trade practices, negligent omission and misrepresentation, and breach of express warranty." (*Id.*) Defendants argue that, contrary to Plaintiffs' claims, Plaintiffs fail to allege that their misbranding theory is cognizable under a parallel state statute. (ECF No. 86-1 at 2.) Additionally, Defendants contend that this Court cannot consider Plaintiffs' argument that the omission of a benzene warning forms the basis of both their federal misbranding violations and state law claims because this argument is found in only Plaintiffs' Opposition and not the ACC. (ECF No. 92 at 15-16.)

In the Court's prior opinion, it concluded that, in Plaintiffs' previous complaint, Plaintiffs insufficiently pled "that the state causes of action that Plaintiffs bring in this case are parallel to 21 U.S.C § 352." *Mitchell*, 2026 WL 509400, at *14. The Court noted that Plaintiffs, in a footnote, cited a handful of state statutes—from California, Louisiana, Missouri, and New York City—that

largely track 21 U.S.C § 352, but that Plaintiffs failed to "make the direct connections clear between these statutory provisions and the ones Plaintiffs allege Defendants violate." *Id.* (citation modified). The Court also held that "nowhere d[id] Plaintiffs allege or otherwise explain parallelism with respect to the common law theories of relief." *Id.*

Although Plaintiffs use slightly different language when describing their misbranding claim in the ACC versus the initial complaint, their misbranding allegations are substantively the same.[13] Plaintiffs have not corrected the deficiencies identified by the Court in its prior Opinion. *Mitchell*, 2026 WL 509400, at *14. In a footnote, Plaintiffs cite almost the same "handful of statutes" as in their prior complaint. (ECF No. 83 ¶ 123 n.84.) *Mitchell*, 2026 WL 509400, at *14. Specifically, Plaintiffs cite statutes from California, Missouri, Louisiana, New York, and New York City. (*Id.*) Plaintiffs fail to allege the significance of the Louisiana and New York City laws, particularly when no Plaintiff resides in Louisiana and no cause of action is asserted under Louisiana or New York City law. Additionally, Plaintiffs do not allege the relevance of the New York state law they cite, which merely prohibits "deceptive acts" and does not seem to incorporate federal misbranding standards. *See* N.Y. Gen. Bus. § 349, *et seq*; (ECF No. 83 ¶ 123 n.84.)

Although the California and Missouri statutes do appear to incorporate federal misbranding standards, Plaintiffs again fail to allege with specificity the connection between these California and Missouri standards and the identical state-law duty imposed under Plaintiffs' various causes of action, which are asserted under *different* state statutes and state common law. *See Walmart 1*,

13 In Plaintiffs' initial complaint, they alleged the BPO products were misbranded because "BPO Products contain benzene and/or degrade to form benzene." (ECF No. 58 ¶ 91, 125.) In the ACC, Plaintiffs allege that Defendants failed to disclose the "presence of benzene" along with the fact that "BPO is an inherently unstable molecule that decomposes into benzene." (ECF No. 83 ¶ 160, 162.) The critical meaning of both allegations is the same: Defendants failed to disclose "the presence of benzene or the risk of benzene formation." (ECF No. 83 ¶ 160.)

2025 WL 3563471, at *18 (noting that plaintiffs must allege the "parallelism of each state law asserted" with "specificity"); *Daugherty v. Padagis US LLC*, 794 F. Supp. 3d 674, 694 (N.D. Cal. 2025) (holding that plaintiffs "failed adequately to allege with specificity parallelism" because "Plaintiffs provide a laundry list of state statutes without demonstrating that these state regulations actually impose requirements identical to federal ones"); *Riegel*, 552 U.S. at 323-24 (noting that plaintiffs' "causes of action" "impose 'requirement[s]'" in addition to the requirements in a federal statute and thus are not parallel).

For example, while Plaintiffs cite to the California Health & Safety Code § 111330, which provides that "[a]ny drug or device is misbranded if its labeling is false or misleading in any particular," Cal. Health & Safety Code § 111330, Plaintiffs do not bring a cause of action under the California Health & Safety Code, but rather other law including California's Unfair Competition Law (UCL), Cal. Bus. & Prof. Code § 17200, solely alleging that "Defendants sold adulterated and misbranded BPO Products." (ECF No. 83 ¶¶ 192, 202.) Plaintiffs fail to allege with sufficient particularity that the BPO products were misbranded under California law, including California Health & Safety Code § 111330, and that the UCL imposes identical state-law duties as the FDCA. *See generally Id.* ¶¶ 192-204 (lacking reference to Cal. Health & Safety Code § 111330, allegations explaining how Defendants' conduct meets the definition of misbranding under § 111330, or specific allegations that the UCL as applied here imposes duties parallel to federal requirements). It is not enough for Plaintiffs to generally allege the BPO products are "misbranded under state law" and "Plaintiffs' claims for relief are brought exclusively under state law." (ECF No. 83. ¶¶ 12, 170.) These allegations are conclusory and do not ultimately make the requisite connections between the California and Missouri statutes that Plaintiffs cite and Plaintiffs' state-law causes of action. Without sufficient allegations, Plaintiffs' ACC appears to

"make an end run around" the FDCA's lack of a private right of action by "recasting violations of the FDCA as violations of state common law." *See In re Medtronic, Inc. Sprint Fidelis Leads Prods. Liab. Litig.*, 592 F. Supp. 2d 1147, 1161 (D. Minn. 2009). This, Plaintiffs cannot do. *See id.*

Additionally, California and Missouri aside, Plaintiffs fail to allege parallel laws from any of the other states under whose law they bring causes of action.[14] Plaintiffs do not specifically allege that any law from these states tracks 21 U.S.C § 352. Plaintiffs do allege that the "vast majority" of states where Defendants' BPO products were sold have "mini-FDCA" statutes that explicitly adopt the federal definition of misbranding. (ECF No. 83 ¶ 171.) However, Plaintiffs do not quote or cite such provisions adopting the federal definition of misbranding beyond the aforementioned handful of statutes from California, Louisiana, Missouri, New York, and New York City. Plaintiffs thus fail to allege "the violation of an identical state-law duty" and do not sufficiently plead parallelism. *Millman*, 2015 WL 778779, at *4 n.2.

In their Opposition, Plaintiffs contend that their state-law causes of action parallel 21 U.S.C. § 352 because the same allegation—that Defendants failed to disclose that their BPO products decompose into benzene during ordinary use—forms the basis of both Plaintiffs' federal and state-law claims. (ECF No. 88 at 30.) Plaintiffs argue that because their state-law claims "target the same allegedly misleading labeling and omissions prohibited by federal law, they parallel federal misbranding requirements rather than impose additional obligations." (*Id.* at 30-31.) However, as Defendants highlight, Plaintiffs did not allege this connection with specificity in their complaint. *See Daugherty*, 794 F. Supp. 3d at 694. Even if Plaintiffs had alleged this

---

[14] Plaintiffs assert state law claims, based on both statutory and common law, of not only California and Missouri but also Illinois, Maryland, Nevada, New York, Ohio, Pennsylvania, Texas, and/or Washington law. (ECF No. 83 ¶¶ 192-299.)

connection, it is not clear that their claims would be parallel given that case law dictates that parallel claims rest on similar *duties*, not similar facts. *See Riegel*, 552 U.S. at 322, 330 (noting that courts undertake a "careful comparison between the state and federal duties at issue" and referring to "duties" throughout the Court's discussion of parallelism). Because Plaintiffs have not "ma[d]e the[] direct connections" in their ACC between their federal misbranding claims and their state-law causes of action, Plaintiffs' misbranding claims cannot survive a motion to dismiss. *Walmart 1*, 2025 WL 3563471, at *14. All claims brought under Plaintiffs' misbranding theory, are dismissed without prejudice.

### *2. Adulteration*

Plaintiffs allege in the ACC that because the BPO products contained benzene, Defendant's BPO products are adulterated under 21 U.S.C. § 351. (ECF No. 83 ¶¶ 132-145, 153-159.) Plaintiffs allege adulteration based on three different theories. First, Plaintiffs allege the BPO products were adulterated under 21 U.S.C. § 351(a)(1) because benzene is a decomposed or filthy substance found in the products. (*Id.* ¶ 132.) Second, Plaintiffs allege benzene's presence in the BPO products resulted from inadequate methods, facilities, testing, and/or controls in violation of the cGMPs, rendering them adulterated under 21 U.S.C. §351(a)(2)(B). (*Id.*) Third, Plaintiffs contend that the BPO products are adulterated because Defendants did not ensure the BPO products met the purity standards under United States Pharmacopeia (USP) General Chapter 467 as incorporated by 21 U.S.C. § 351(b). (*Id.*)

Defendants argue that Plaintiffs' claims are preempted because their theories seek to add requirements not "identical with" federal regulations, and "otherwise contradict the FDA's determination that BPO is safe and effective in the Acne Medications." (ECF No. 86-1 at 43.) Defendants further submit that Plaintiffs fail to allege their claims are cognizable under parallel state law because Plaintiffs again "do nothing more than cite a handful of statutes" that "cite . . .

federal requirements." (*Id.*) Defendants contend that Plaintiffs merely state conclusions that these state laws are parallel to their claims and fail to make direct connections clear. (*Id.* at 43-44.)

Plaintiffs, in response, submit that they alleged a viable violation of the FDCA under their three theories of adulteration. (ECF No. 88 at 15-27.) Plaintiffs also contend that they "plausibly allege violations of state law which parallel the requirements of the FDCA," and that they pled "the direct connections the Court previously found missing" by "showing how Defendants' sale [of] adulterated and misbranded BPO Products trigger state consumer protection and common-law liability." (*Id.* at 27.) Plaintiffs submit that the ACC "identifies specific health and safety statutes . . . that explicitly incorporate or parallel federal cGMP and USP requirements," and that the ACC alleges the BPO products were contaminated with "benzene over the 2ppm limit." (*Id.* at 28.) Plaintiffs contend "[t]hat contamination rendered the products adulterated and illegal to sell under state health and safety codes," and that this "unlawful status supports Plaintiffs' state consumer protection, warranty, and common-law claims." (*Id.* at 28-29.)

In the Court's prior Opinion, the Court held that Plaintiff's adulteration claims were "not preempted to the extent they are parallel to state cGMP provisions," however the Court held that Plaintiff failed to sufficiently plead parallelism. *Mitchell*, 2026 WL 509400, at *15-16. The Court again holds that Plaintiffs have failed to allege with sufficient specificity the parallelism of their state-law claims related to adulteration, as required for these claims to survive preemption. *See* 21 U.S.C. § 379r(a); *Eisman*, 2025 WL 241024, at *3 (holding that the FDCA "does not preempt claims under state law that impose identical or 'parallel' requirements to FDA regulations, such as where a plaintiff sues over a defendant's violation of the FDCA").

Parallelism is a strict requirement that allows only a narrow segment of claims to survive preemption. *In re Medtronic, Inc., Sprint Fidelis Leads Prods. Liab. Litig.*, 623 F.3d at 1204

(noting that Supreme Court precedent including *Riegel*, "create[s] a narrow gap through which a plaintiff's state-law claim must fit if it is to escape express or implied preemption" and that "[t]he plaintiff must be suing for conduct that *violates* the FDCA . . . , but the plaintiff must not be suing *because* the conduct violates the FDCA); *see also Carter*, 582 F. Supp. 2d at 1282 (holding that "*virtually any* state requirement that relates to the regulation of nonprescription drugs can be preempted, regardless of the common law [or state legislative or regulatory] theory under which it is brought" (citing *Riegel*, 552 U.S. at 324-25)).

Again, "[i]n order to adequately allege a 'parallel' claim that would escape preemption, a plaintiff must generally allege 'specific violations of federal law that establish a parallel state duty.' 'Generalized common law theories of liability' do not suffice to meet this standard." *Conley*, 482 F. Supp. 3d at 275 (citations omitted). "Parallel claims, like others, must contain more than 'labels and conclusions,'" *Clements v. Sanofi-Aventis, U.S., Inc.*, 111 F. Supp. 3d 586, 600-01 (D.N.J. 2015) (citations omitted), and Plaintiffs "cannot simply incant the magic words '[Defendant] violated FDA regulations.'" *Gross v. Stryker Corp.*, 858 F. Supp. 2d 466, 493 (W.D. Pa. 2012) (citation omitted); *see also Parker v. Stryker Corp.*, 584 F. Supp. 2d 1298, 1300-03 (D. Colo. 2008) (holding that plaintiff's claims were preempted because plaintiff failed to adequately plead parallel claims); *Wolicki-Gables v. Arrow Int'l, Inc.*, 634 F.3d 1296, 1301 (11th Cir. 2011) ("Parallel claims must be specifically stated in the initial pleadings."); *see also Millman*, 2015 WL 778779, at *4 n.2 (requiring that, "to state a 'parallel' claim, a plaintiff must allege (1) the violation of a specific federal requirement. . . ; (2) the violation of an identical state-law duty; and (3) that the predicate federal violation caused his or her injuries."); *Walmart 1*, 2025 WL 3563471, at *18 (requiring plaintiffs to plead the "parallelism of each state law asserted" with "specificity"). The Eastern District of California, in a case that likewise involved litigation over products containing BPO,

advised plaintiffs "to make . . . direct connections [between their state-law claims and the allegedly parallel federal regulations] . . . as opposed to requiring [Defendant] and the Court to put the pieces together in a complex pleading." *Walmart 1*, 2025 WL 3563471, at *14.

Here, Plaintiffs have failed to sufficiently allege that the state requirements they seek to impose on Defendants through Plaintiffs' causes of action are parallel to federal requirements. The parallelism of the cause of action matters. *See Riegel*, 552 U.S. at 323-25 (holding that "common-law *causes of action* for negligence and strict liability do impose 'requirement[s]' and would be pre-empted by federal requirements" and explaining that "excluding common-law duties from the scope of pre-emption would make little sense . . . . Indeed, one would think that tort law, applied by juries . . . is less deserving of preservation" (emphasis added)); *see also Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 342 (2001) ("[A]lthough [*Lohr*] can be read to allow certain state-law causes of actions that parallel federal safety requirements, it does not stand for the proposition that any FDCA violation will support a state-law claim."); *see also id.* at 350 (noting that, in a case that involved common law causes of action for FDCA violations, "complying with the FDA's detailed regulatory regime in the shadow of 50 States' tort regimes will dramatically increase the burdens facing potential applicants [for FDA approval]").

In the ACC, Plaintiffs allege eight counts, each alleging violations of up to ten different states' laws.[15] (ECF No. 83 ¶¶ 183, 192-299.) Although Plaintiffs demonstrate that certain state statutes incorporate the cGMPs and USP, (*Id.* ¶ 146), Plaintiffs do not allege with sufficient specificity that their causes of action—which are grounded in *different* state statutes as well as the

[15] Although Counts VI through VIII do not mention specific laws of ten states (ECF No. 83 ¶¶ 271-299), the counts are brought on behalf of subclasses representing plaintiffs who live in ten different states, (ECF No. 83 ¶ 183), and the counts rely on causes of action based in state common law, which could differ in each of those ten states.

common-law—impose parallel requirements. For example, in Count VIII (Breach of Express Warranty), although Plaintiffs allege generally that the BPO products were "adulterated," they do not allege facts for this Court to infer that Plaintiffs violated the ten state statutes incorporating the cGMPs or USP; that the violation of each of the ten state statutes constitutes the basis of a breach of express warranty claim in each of the ten jurisdictions, respectively; nor that the requirements imposed by a breach of express warranty claim in each of the ten states are identical to federal requirements. (*Id.* ¶¶ 295-99.) Without more, Count VIII presents only a "[g]eneralized common law theor[y] of liability," *Conley*, 482 F. Supp. 3d at 275, and not the "specific[]" pleading required for parallel claims. *See Wolicki-Gables*, 634 F.3d at 1301.

As to Plaintiffs' remaining counts, Plaintiffs fail to "make . . . direct connections" demonstrating that their causes of action impose identical requirements to federal requirements. *See Walmart 1*, 2025 WL 3563471, at *14.[16] Plaintiffs have not corrected the parallelism deficiency identified in the Court's prior Opinion. *Mitchell*, 2026 WL 509400, at *16 ("Plaintiffs do not make the direct connections between [state] statutes [parallel to the cGMPS] and *the ones under which Plaintiffs seek relief*" (cleaned up) (emphasis added)). The Court recognizes that other district courts have come out differently on parallelism in these cases, *see Walmart 2*, 2026 WL 2355980, at *18, and *Walgreens*, 2026 WL 2355975, at *16, however, the Court finds persuasive precedent like *Conley* and *Wolicki-Gables* requiring pleading parallelism with specificity. Indeed, pleading parallelism with specificity is necessary not only because of

---

16 Even in Plaintiffs' briefing, Plaintiffs do not explain the connections between federal requirements and each of their causes of action brought under various state law. In Plaintiffs' Opposition, they gesture at alleged examples of parallelism for two of their state law claims, but fall short. (ECF No. 88 at 29-30 (briefly describing parallelism as related to Plaintiffs' separate claims for a violation of Missouri's and Texas's state deceptive trade practices statutes)). Plaintiffs do not attempt to specifically explain the parallelism between federal requirements and the numerous other state law claims they assert.

precedent like *Conley* and *Wolicki-Gables*, but also because it is critical to a courts' "careful comparison between the allegedly pre-empting federal requirement and the allegedly pre-empted state requirement," *Lohr*, 518 U.S. at 500. Without specific allegations about the individual parallelism of the state law causes of actions in the ACC, the Court is left to speculate and unable to perform the careful comparison required.[17] Plaintiffs must allege parallelism with specificity for each of their numerous state law claims. All claims brought under Plaintiffs' adulteration theory are dismissed without prejudice.

## IV. CONCLUSION

For the foregoing reasons, and other good cause shown, Defendants' Motion to Dismiss, (ECF No. 86), is **GRANTED.** An appropriate Order follows.

Dated: November 16, 2026

GEORGETTE CASTNER
UNITED STATES DISTRICT JUDGE

[17] Because the Court dismisses the ACC due to the deficiencies in Plaintiff's allegations related to parallelism, the Court does not reach Defendants' argument that Plaintiffs' adulteration theory suffers "fatal flaws and reduces down to the preempted theory that benzene presence alone violates the FDCA" or Defendants' argument that Plaintiffs failed to plead their state law claims for reasons other than parallelism deficiencies. (ECF No. 86-1 at 39, 45.)